Our due case this morning is No. 2010-1134, Cummins, Inc. v. TAS DISTRIBUTING. Ms. Gills. Good morning, Your Honors. May it please the Court. My name is John Gills and I am counsel for Appellant Cummins, Inc. The issue before us today is a simple one. Cummins should not be prevented from defending itself by raising patent-based and related defenses when TAS, the appellee in this case, was permitted in a related case below to raise new contract theories on the same contracts at issue in the party's first lawsuit. Beyond the law that's cited in our briefs, traditional notions of fairness and equity require that Cummins be permitted to defend itself where the Court has not only allowed TAS to raise the same contract theory it lost on in the party's first lawsuit, but to expand and add additional contract theories to its suit. Now, as I understand TAS 2, the second complaint filed by TAS, the trial court has limited the recovery, at least seems to have limited the recovery, to the period post the disposition of TAS 1. Is that correct? That is correct. Cummins had filed a motion based on raised judicata grounds to throw out their claims in their entirety, and the Court's most recent ruling cut off TAS's claim for damages until the end of the first lawsuit. All right. But that seems like a sensible result since they lost the first litigation on the failure to prove damages with sufficient specificity. So, that's finished and done. I assume that was dismissal with prejudice, right? The first case was a dismissal with prejudice. To address your question, I don't think it was a sensible result to allow them to continue to have a damages claim post 2005 as the district court allowed. Well, suppose that, I mean, if their theory is that there is still an obligation to pay under the agreements, they failed to prove with sufficient specificity the damages for the period up to whatever it was, 2005. But that nonetheless, damages continue to accrue, and if they are now prepared to prove the later period damages with sufficient specificity, why isn't that a sensible result for the district court to follow? I think because there were two separate claims, or two different types of claims, if you will, between the 2003 lawsuit and the 2007 lawsuit. With respect to their reasonable efforts claim, which was the only type of claim they brought in 2003, they alleged that Cummins failed to fully exploit or use the licensed technology, thereby maximizing royalties to TAS. They lost on that claim based on the theory that their damages claim was too speculative, and they asked for specific performance, which the court also denied. The claims they tried to bring or are trying to bring in 2007 go beyond that. They now say, in addition to failing to use reasonable efforts to use the TAS technology, Cummins, you are also now using the TAS technology and not paying TAS for it. That claim regarding use of the underlying technology for which no payment has allegedly been made is not a claim they raised in 2003. In fact, they never alleged infringement or use of the TAS technology for which no payment was made. That is something new that they brought in 2007. Cummins' position in the 2007 case was all of these claims were ripe for adjudication in 2003. When you're saying they're using without permission, I mean, that sounds like an infringement claim, but their claim was based on breach of contract, right? Correct. I'm looking at the TAS 2 complaint at JA, in particular at JA 1861, which is their count one, which is all breach of contract, right? Am I in the right? Yeah, that's the right complaint. Yes. TAS framed their claim as breach of contract. They could have framed it also as infringement of the underlying TAS patents. They framed it as breach of contract in their count one claim, claiming that Cummins used underlying technology and did not pay TAS or royalty for that use. So claims regarding use of technology were not made in the first lawsuit. In fact, they were making claims of lack of use, lack of exploitation. It was only in 2007 that they're saying, oh, on the same class of engines that we knew you were selling in 2003, we knew you had 30% of the market. We knew you were selling all these engines for the first time in 2007. Now they're saying something on your engines is ours and you need to pay us for it. Where in the claims in 2007 are they making that as opposed to the obligations to pay under the license agreement? I'm at 1861, although I joined it. Yes. The way I read that claim, they're basically saying you owe us for what the license agreement obligates you to pay and you're not doing it. This count one is a claim for royalties for any original ECM product which embodies TAS technology. I'm sorry, where are you reading? I am looking at JA 1861, paragraph 39, which is part of TAS's count one claim in the 07 case. Right. Okay. Good. I'm with you. That count one claim, which is you, Cummins, owe TAS royalties for using TAS technology in what they call an original ECM product. That type of claim TAS did not make in 2003. Instead, in 2003, TAS made a claim similar to what they make in count three of the 07 case, which is Cummins, you fail to use reasonable efforts to use the license technology. You haven't done enough. You haven't used it. You haven't exploited it, and therefore we've been damaged.  So again, with this background, there is a 2003 case where Cummins is accused of not using the technology to any great extent. Cummins prevailed in that case on a meritorious defense. And then in 2007, Cummins is sued again, claiming, again, you're not using reasonable efforts to use the license technology, and alternatively, you are using our license technology and you need to pay us. During the course of discovery in the 2007 case, where now TAS is claiming you're using something of TAS's, and Cummins' position is, we've developed our own technology. We licensed one little piece over here, and we've sold the ICON products over here, and you were unhappy with the amount of sales of those ICON products, which is why you sued us in 2003. You lost that claim. Now, TAS, you're trying to take credit for developments that Cummins has made. And we said, well, then this gets into what are the scope? What is the scope of your licensed technology? What do your patents cover? Because we're not doing that. We're doing something else. We're doing our own development. Why could you not have brought up these same defenses in TAS 1? The 2003 case did not get into what the scope of TAS's technology was, or what its patents covered. So the discovery and the claims at issue did not involve any of that. It merely focused on, had Cummins done enough marketing and selling of the licensed product that Cummins did create? As an affirmative defense to breach a contract cause of action, why couldn't Cummins have asserted the validity of the patent at that point? We also argue in our brief that the district court lacked subject matter jurisdiction for us to raise invalidity of patents. But not as a defense, as Judge Reyna has pointed out, correct? I mean, you could have come in in the first case and said, wait a minute, this patent is in doubt, right? And that would have given you a defense. There still would have had to be a basis. In order to assert the defense, there's got to be jurisdiction to raise the defense or the claim. Jurisdiction comes from diversity of citizenship. You've got a contract case sitting there in the district court. You're not suggesting that you can't defend against the contract claim on the ground that the underlying patent that underlies the contract is invalid, right? I think we can defend, but the issue here is there's got to be facts to support that defense. And those facts were not discovered until 2009 as part of the second case. That really goes to the whole later discovery. I mean, let's assume for the moment the discovery issue out of the case. And let's just assume you had all the facts in 2003 that you do now, then Judge Reyna's question is, why couldn't you have and why didn't you at that point assert the invalidity of the patent which you now assert? I mean, the whole jurisdictional question seems to me to be a red herring unless I'm missing something. You could have asserted that defense, correct? I don't know that the jurisdiction issue is a red herring, but if the facts were known to Cummins in 2003, then yes, conceivably a defense could have been raised if all the facts were known. The facts were not known and Cummins was entitled to rely on the representation and warranty that TAS had given in the master agreement. The record does indicate that Cummins had information that the sales of the patent, the TAS patent, had occurred prior to the application for the patent. The item in the record is a 1996 Berry Hill document, which indicates that variants of a TAS product were sold in 1986. But indications that variants were sold is not an indication that critical limitations present in the 703 and 469 patent license were present in that variant. In fact, the evidence was to the contrary because TAS's inventor said that product had warranty issues, there were returns, we made improvements on it, which were the subject of the later applied for and obtained patents. And the agreement, the initial agreement that was signed, the master agreement from 1997, that came after the date of this document. Cummins got a warranty from TAS that it had the unconditional authority to grant the rights that it was granting, that it owned the technology, that TAS was unaware of any claim or potential claim that could be made to encumber its rights. And that TAS was saying this after TAS had made a diligent investigation of these facts. And I think here to hold Cummins to one document, which we think supports our theory, not theirs. And in the face of this warranty, and in the face of information within TAS's possession, custody, and control regarding what it sold, what features it had, et cetera, when none of this information was disclosed to the USPTO. And even in the 2009... Where did you find that out exactly? We found it out in approximately January, February 2009, when we took the deposition of a third party witness, Gary Kropchak, who was first disclosed to Cummins in the 2007 case. And we actually tried to get discovery of some of these facts earlier, and our efforts were thwarted by TAS. But some of the testimony from Mr. Kropchak, we detail in the unredacted 2009 complaint, which is part of the record. Where Mr. Kropchak is taken through some of the key limitations of the patent, and he admits that those limitations were present in the 1986 version of the product. Which is not something that had ever been disclosed to Cummins, which is not something that had ever been disclosed to the USPTO. So not something that would have been a part of the public record that Cummins could have gone to and looked at. And subsequent deposition testimony of one of the inventors was also consistent with that in 2009, which was inconsistent with any type of evidence or testimony from the earlier case. But in your interaction with the district court, where the theory was that if in fact you wanted to challenge the patent, it could have been done. And then discovery could have been taken and these facts could have been adduced. That underlies the ruling, is it not, that this is now tardy? I still don't think that our claim is tardy. I still don't think we could have challenged a patent without either jurisdiction to do so, or without the facts to do so. It's clear there's jurisdiction as a defense. I'm sure you know that. And further, I think with some of the exceptions even to raised judicata that we cite in our brief, that even if you find it was something that could have been raised in the first case, it's not a bar to raise it in the second case under the D.J. exception in the restatement. Section 33. And we cite the Allen Block case for the proposition that where you are a D.J. plaintiff, which is what Cummins was in the first case, you are not barred from bringing a subsequent claim in a later case, where we feel that the claim we're bringing would not nullify the judgment in the first case. We also raised the misrepresentation exception to raised judicata, which is also found in the section of the restatement and in case law. And that based on TAS's warranty in the master agreement, as well as their concealment of facts regarding not just sale of a variant, but where the variant included critical features that are present in later filed patents that they didn't disclose to us or to the patent office, we should be permitted to bring the claim later. And I think another key is fundamental fairness. If the court believes that it was incumbent upon Cummins to bring a patent-based claim in the first suit, then why wasn't it incumbent upon TAS to bring a use-based claim in that first suit? If we're out for all time, why aren't they out? Their claim in the 2007 case is still pending. We're not the party bringing piecemeal litigation. That's the whole point of raised judicata, that you have one case and each side battles it out on their claims and defenses in one case. We won the first case. We thought we were done, with the exception of the ICON products that we thought the parties agreed would be sold pursuant to this contract. They sued us again, and we've been defending the second case for four and a half years. We should be entitled to defend ourselves, where we didn't raise these defenses. They weren't litigated before. The issues underlying these defenses weren't litigated before. We should be permitted to defend ourselves, and our hands are tied. Let's hear from the other side.  Thank you, Your Honor. Thank you. Mr. Unrath. Good morning. My name is Craig Unrath, and I represent Tass Distributing Company. First off, I'd just like to respond to a couple of things that came up in counsel's argument. Bringing Tass, too, into this discussion, quite frankly, kind of confuses me. If they believe they have a res judicata argument in Tass, too, then they should bring a res judicata argument in Tass, too. The cases between Tass I and Tass II are completely different. In Tass I, Tass licensed this patent to Cummins with the understanding that they would market it, that they would try to sell it, otherwise we wouldn't make any loyalties. We lost because we couldn't prove damages. You know, there was a promise that they would sell 10,000 units or something like this. Well, that was not written into the contract. There was a question of fact as to whether or not they had or had not marketed it effectively, but we couldn't prove our damages, so they dismissed that part of it. When you say promise, there was no contractual promise that they were going to sell a certain amount of units. That's correct, and that's what renders speculative, the damages alone. I mean, it may very well have been true that they had failed to market it as they promised, but we couldn't establish by how much. Now, Tass II is completely different. It's entirely different. Tass II, we learned that they were making sales, but they weren't paying the loyalties on it. And that's two completely different aspects of the contract. Now, counsel opened her argument saying that, well, how can we argue res judicata, and how come they can't? Well, they can. If they want to raise res judicata in Tass II, they're welcome to do so. Here, we're dealing with Tass III. Here, we're dealing with a situation where they could have raised these defenses in the original suit, in Tass I. So, you're saying that… Go ahead, Judge. So, you're saying that Tass II is a completely different cause of action involving different facts and different evidence? Oh, absolutely. Different provisions of the contract and everything else. Tass I is a failure to market, to make all reasonable efforts to try to sell it. Tass II says, you've been selling it and you haven't been paying. Under Illinois' law, wouldn't that be a basis for finding against res judicata? Do you have two separate causes of actions involving different types of evidence, different types of witnesses, different types of facts? Your Honor, we were not aware during Tass I that they'd been selling this equipment and not paying us royalties. The evidence was not known to us. We could not have brought it because we didn't… As far as we know, they were paying royalties on the small amount of material that they were selling. Well, I'm not sure that answers Judge Reina's basic question, which was exactly the question I was going to ask, which is… It seems to me that the more you argue that Tass I and Tass II are different, the more you strengthen your opposing counsel's argument, the res judicata shouldn't apply to Tass II. The reasoning would be somewhat like this. Suppose that in Tass I, and I understand you don't think this is true, but let's say hypothetically, that you raised a very, very weak argument with respect to some feature of the contract that just had no legs. And Cummins came in and said, that isn't a plausible reading of the contract. And the district court tossed that case out in a nanosecond, saying, Cummins is right, that there's nothing to this. And then you come back four years later and you bring the case you now bring in which there's a substantial basis in the contract for your claim. And now Cummins says, well, now we have to haul out all of our defenses, including the defense of patent invalidity. Why isn't that a legitimate thing for them to do, given that it didn't take very much, hypothetically, to get rid of your first claim, but your second claim is a much more serious claim? Why penalize them for not hauling out all the artillery in the first case? The reason, Your Honor, is this, is that Tass II, the proofs that will win the claim for us in Tass II have absolutely nothing to do with Tass I. Well, the more you say that, the more I'm wondering, why then should the defendants not be allowed to treat Tass II as an entirely different case with different available defenses? Or at least additional available defenses that weren't raised in Tass I? Because of the starkly different character of the two cases. I think they are entirely different, but here in the case of Barr, we're dealing with the difference between Tass I and Tass III. And the salient point, the critical point here, is that patent invalidity, a claim for patent invalidity, is outcome determinative in Tass I. We had a breach of contract. That contract is based on the validity of the patents. If you then later claim that those patents are invalid, then the contracts are invalid. Well, the patents are assumed to be valid under law. In Tass I, you have a contract. And the suit that you brought was that Cummins was not marketing aggressively enough. Correct. That's a pure contractual issue. It has nothing to do with validity or infringement. Oh, I would think that we're claiming that they've breached our contract. And that if the basis for that contract is nonexistent, if the contract is void, then it's unenforceable. It's a complete defense. Moreover, you have to take into account... Cummins is assuming that your representation is that you own a patent, that the patent that you own is a valid patent. They are making that assumption, yes. They had, within their knowledge, evidence, the same evidence that they raise now in Tass III, that there may have been some defects in our patent. Why should we not find that you had that knowledge as well, and that there's a misuse of patents? Your Honor, we've gotten to that stage. We strongly assert that our patents are completely valid. But the fact is, is that had they raised these arguments in Tass I, they would have not only prevailed, as they did, they wouldn't have to deal with speculative damages. They would have won in the breach of contract action. But here's another thing. Would they have won because the patents are invalid? If they could prove that the patents were invalid, our breach of contract claim would have failed as a matter of law. Moreover, they argued in their counterclaim that they had no obligation to pay any royalties beyond the sixth year. They lost that claim. They lost. Now, had they brought, had they argued successfully that those patents were invalid in Tass I, well, they would have won on their counterclaim. And Tass II would never have even existed. What is your view, what is your position with respect to the obligation to make payments after the expiration of the two patents? I believe that we've never required or even suggested that they should pay beyond the expiration of the patents. And you've made that clear. I couldn't see anything in the record that made that clear one way or another. Is your position then that you have no, you have no expectation, you, your contract rights is expiring with the expiration of the patents? Absolutely. Yeah, yeah. But the patents do not expire in the sixth year. Well, I understand that. One of my guests just expired and the other expires in 2013, I believe. I, you would know better than I, Your Honor. I would have to, I would have to check that. Based on my recollection of the record. But okay, let's assume that's true. But in any event, that's the, that's the end of any obligation, ongoing obligation to pay anything under the license agreement. Okay. Now, as far as the whole patent misuse issue, could you address the Mercoid case from the Supreme Court, which suggests that at least if read broadly, that res judicata does not apply to claims of patent misuse in light of the public policy underlying those claims? Yes, certainly. Mercoid is, how do I politely put it, it has some dust on it. It's getting older. It's been falling under a considerable amount of criticism over the years. Well, Supreme Court cases, even with dust, get a lot of attention from the lower courts. I agree. The, I should point out there's one distinguishing feature that struck me is that in Mercoid, there was no discussion as to whether or not there was improper conduct going on here. They were trying to extend their patent to include non-patented or unpatented switches. Both parties more or less agreed to that. They said, yeah, we're doing it. And the Supreme Court jumped in and said, you know, as a matter of public policy, we, you know, we just can't see that we can do this. Now, in the case at bar, we vigorously protest any suggestion that we have misused our patents. That case, we haven't even gotten to that point. The, and I think that that is probably the single most distinguishing factor in Mercoid. I'd also like to, you know, direct the court's attention to the Seventh Circus decision in Wacome. You know, case law has evolved considerably since Mercoid came out. And frankly, it's the first time I've ever seen it cited for this proposition ever, perhaps. The Seventh Circuit in Wacome pointed out that applying res judicata encourages earlier and more vigorous challenges to the validity of patents, thereby conserving judicial resources. Seventh Circuit had absolutely no problem at all in suggesting that res judicata apply to patent claims. The court also found no, or at least did not mention, any apparent conflict with Mercoid. Wacome, is it? I didn't see that case in your brief. Is it? It's mentioned in the district court's decision. Is it? Okay. As a matter of fact, it concludes with a discussion of federal policy. Okay. My view of the policy is that in any patent, in any license agreement, any agreement that involves intellectual property of one form or another, and there's a dispute on the contract, that there is always an obligation to raise the patent or other intellectual property issue, even if no one is arguing or saying that there's validity or invalidity otherwise. I think, I believe that in a breach of contract action based on a patent, that it is the defendant's obligation to investigate the validity of that patent. Yes, I do, Your Honor. Particularly... Have they accepted the representations? You're saying that that can't be done either, that a patent license? Not in this specific case, Your Honor. How does one know? How does one know you're going to have an argument ten years later? In this particular case, they did know. If you look at the allegations that they've made for mispatent misuse... They shouldn't have trusted you, are you saying? No, I'm saying that the information that they had before they even signed their contracts is the same evidence they're using right now to establish their claim. They say otherwise. They say this came out in discovery. They're saying the prior use was on the public record and available? They mentioned, I believe, the deposition of Mr. Gottschalk. That deposition merely confirmed what they already knew, which we have their meeting notes where they don't even contest the validity of these notes, where they talk about the prior sales. They knew this information. And under those circumstances... Are they a million dollars down for an invalid patent? Pardon me? You're saying that they knew that it was invalid, but nonetheless paid the uncontested royalty? I would say that they had the information that would have put them on notice to investigate further. If that's the case, then... And, McCoy, it does cite the policy that you were saying that res judicata is appropriate in order to conserve for economy purposes. But it's more than that. It's that res judicata won't save a patent that's from being invalid if necessary. So you don't apply res judicata where there's grounds of an invalid patent. Aren't there grounds for reasonable people to differ as to whether the patent is valid in this situation? I think that there is certainly grounds for them to question these patents, as they have now, based on the same evidence they had before they signed the contract. Is it good policy to apply res judicata and eliminate questions on the validity of a patent, where there's a basis for those questions? I think that where they have the information prior to actually signing the contract, when they have that information available, they cannot later claim ignorance and say, well, we could have raised this, but we didn't. Now we have an absolute right to raise these issues. Now, does this apply in all cases? No, Your Honor. I'm not going to set a bright-line rule on this or ask that the court do so. But in a case where the defendants, in a breach of contract action, on a patent action, have prior notice, prior to even signing the contract, of potential defects, the same potential defects that they raise now in Task 3, yes, I think that there's no doubt in my mind at all that they are required to address those potential or alleged patent defects. It's an established part of Illinois law. And really, that's what we're dealing with here. We're not dealing with Wisconsin law, as they mentioned under the Anderson case. We're dealing with Illinois law. And it is a well-settled aspect of Illinois law that you cannot defend yourself in a breach of contract action and then later on file another action to hold that contract invalid, particularly when the same grounds that you allege for invalidity were known to you before you even signed the contract. Let me ask you, this is really in the nature of a housekeeping question, I suppose. But the trial court entered an order denying Cummins' leave to amend its answer in the Task 2 case by incorporating what amounts to what we're calling Task 3, the Cummins' independent action, into the answer in Task 2, as I understand it. Am I correct so far? I have to admit, Your Honor, you've confused me a little bit. Task 1 is over and done. Task 2 is pending. And that is your second contract action. Failure to pay. Right. Now, what you've called Task 3, the Cummins' independent action, is pending. And that's before us today. In the course of Task 2, Cummins asked to amend its answer to include the allegations that are now part of its affirmative allegations in Task 3. Correct so far? Yes. Yeah, okay. And my question is, I'm a little confused as to why the district court would have done that other than just thinking that it's helpful to have separate actions, I don't know. But in any event, is it not the case that in thinking about this case, we really ought to think about Task 3, the independent Cummins' action, as being effectively a defense to Task 2? There isn't any affirmative relief sought other than a declaratory judgment with respect to the patent validity, correct, in Task 3? I don't see how we could use Task 3 as a defense. Well, in other words, look. If Task 3, if we should say that West Georgia County doesn't apply, and they win Task 3, then you lose Task 2, correct? Yes. All right. So that's all I'm saying. My point is that... Because there's no patents. Right. I'm trying to keep the multiplication of entities down here. I mean, it seems like we're dealing with an independent case, which really isn't an independent case. It's really in the nature of the defense to your second contract action. And the question is, can they raise that defense or not? And I believe they have, Your Honor. But I'd have to double check on that. All right. Well, that's all right. I think there's one last thing that, actually, a couple things you should know. By the way, I see that my time is up here. Well, give us your last point, and we'll balance the time. One of the central issues in Illinois' res judicata law is that you can never allow a judgment, a second judgment, to nullify a prior judgment. In this case, we have a ruling in our favor saying that Cummins owes us royalties in the fifth year, in the sixth year and beyond. To allow this case to go forward, if they prevail, it will have the effect of nullifying a prior court judgment. And that, in and of itself, is grounds for affirming the district court's ruling. We'll have that in mind. Thank you, Mr. Arnett. Ms. Davis? Thank you, Your Honor. I'd start by saying that I would agree with Judge Bryson's comments earlier, that if counsel concedes that the 2003 and 2007 lawsuits are different causes of action, with different facts, different actors, different time periods, that res judicata would not prevent us from raising the patent and related defenses that we want to make in our affirmative case. On one of the closing points, yes, the Cummins v. Tadds, the case below, is a defense to their 2007 case, or Tadds 2. We filed the claims both in a new case and we sought to amend in the 2007 case on the same day. The court denied leave to amend. And we also tried through interlocutory appeals and other arguments to get these same defenses into the 2007 case and were precluded from doing so based on the court's res judicata finding in the case below. So we do agree that this case is a defense to the 2007 case, and we've tried every which way we can to get it before the court and to be heard. Tadds has not made clear to us, as far as I know, that they are not seeking any royalties beyond the expiration date of the patent, so I was happy to hear counsel say that. But they have now. On the record, but prior to today, I don't think we've got a clear statement to that effect. You wouldn't need it. The law is clear. We think McCoy, despite the dust, is still good law and is applicable here to allow our patent misuse defense to proceed. The patent misuse would only apply, as I understand the theory as applied to this case, if they were seeking payments after the expiration, right? Correct. And if they're not, then the patent misuse claim goes away. Well, there's two flavors of it. It would be seeking to extend your monopoly beyond the patent term. Which they're not trying to do for their concession. Sad that they're not trying to do. The other flavor would be knowingly trying to enforce invalid or unenforceable patents right now, which we think they're trying to do through the 2007 case in extracting royalties from us. On the nullification point, I want to point to something in the district court's order below, which is at JA-19. For nullification even to apply, first and foremost, all the requirements are raised due to how to have to be met, which we don't think they have been. But if you assume that they have and you say that the DJ exception doesn't apply to us, you would have to find that the prior judgment would be nullified in seeking invalidity of the underlying agreements. The district court, in its opinion below at JA-19, note 14 says, as the decision in TAS 1 did not specifically find that the agreements were valid, the court does not wish to base its decision on this issue on collateral estoppel. So, even the district court acknowledges that the validity of the agreements were not an issue in the 2003 case. So, therefore, we shouldn't be precluded from objecting to either the validity of the patents or the validity of the agreements in our Cummins v. TAS case. Let me ask you about the notion that the prior judgment would be nullified. What do you understand to be the full effect of the prior ruling in TAS 1? The way you view it, as I understand it, is the judgment is that you won, period, end of discussion based on failure to show damages. Your opposing counsel says, no, they won on the question of failure to show anything but non-speculative damages, but we won on the merits of the underlying liability. Do you think that the aspect of the trial judge's ruling in TAS 1 that was in their favor qualifies as the kind of decision judgment that, under Illinois law, is not to be overturned by the failure to apply res judicata? Do you understand the question? I do. Poorly put, I'm afraid. I do. I follow you. It's Cummins' position that we won. On their breach of contract claim, you have to prove a contract, substantial performance by the plaintiff, damages, and injury. Right. We won on that liability. That's the only liability claim that they had. But along the way, the court did find in their favor on the question of the obligation for payment, right? Cummins, it was not a liability claim. Right. It was Cummins' BJ claim in the 2003 case, which was a surgical claim that this provision, this provision over here of the license agreement, is limited in time. We said, court, declare, because there's a controversy between the parties as to whether this royalty provision goes beyond five years. Because in 1997, there was a section 6B that talked about payments after five years in 6 and 7. And then there was an amendment to the agreements in 1998 where that amendment said, delete section 6B, which talked about payments in years 6 and 7. So our very narrowly defined claim in 2003 was case or controversy, judge, BJ claim as to what this provision of the contract means and whether the removal of 6B, obligation of paying years 6 and 7, meant that we only had to pay for the first five years. Okay. We sought nothing more than that. Okay. But the judge ruled— And that's all the court decided. He didn't decide liability for future actions. Yes. But that was a counterclaim. That was a BJ counterclaim. And he ruled against you on that counterclaim. So that becomes part of the judgment. Correct. Okay. But it's on a narrow issue. Yes.  Okay. Thank you. Thank you very much, Your Honor. Thank you, Ms. Jones. Thank you, Mr. O'Rourke. The case has taken a new submission.